[No. 9021–6–I.   Division One.   December 8, 1980.]

THE STATE OF WASHINGTON, *on the Relation of Tom Farmer, Appellant,* v. EDMONDS MUNICIPAL COURT, *Respondent.*

THE STATE OF WASHINGTON, *on the Relation of Allen Black, Appellant,* v. EDMONDS MUNICIPAL COURT, *Respondent.*

*Jones & Young, P.S.,* and *Kathryn Ross,* for appellants.

*Ogden, Ogden & Murphy* and *Wayne Tanaka,* for respondent.

CALLOW, C.J.—We are asked to decide whether cities which have adopted the optional municipal code may establish police courts pursuant to RCW 35A.20 even if such cities are situated in counties which have adopted the justice court act of 1961. We hold that they may not.

The appellants were cited for separate infractions of driving while intoxicated within the Edmonds city limits. The applicable Edmonds municipal ordinance is identical to RCW 46.61.506, and provides for mandatory jail sentences for those found guilty. The appellants' motions for jury trials were denied, and writs of review to superior court challenging the denials were dismissed. This appeal followed. The appellants contend that: (1) the City of Edmonds was not authorized to end its participation in the district court system and establish its own police court under RCW 35A.20; and (2) the denial of jury trials in Edmonds Municipal Court violates equal protection under both the United States and Washington State Constitutions. We agree with the appellants' first contention and need not reach the second.

Prior to 1961, the cornerstone of courts of limited jurisdiction was the justice of the peace, as authorized by RCW 3.04–3.28. Municipal, or police, courts were authorized by RCW Title 35, the state municipal code. *See* RCW 35.20-.010 (cities over 400,000); RCW 35.22.420 (cities of first class); RCW 35.23.590 (cities of second class); RCW 35.24-.450 (cities of third class); RCW 35.27.520 (towns). Only municipal courts in cities over 400,000 were authorized to impanel juries. Police judges in first and third class cities, and in towns, could be appointed from among the regularly

elected county justices of the peace. Municipal judges in cities over 400,000, and police judges in second class cities, were directly elected. Municipal court judges in cities over 400,000 had concurrent jurisdiction with superior court judges and justices of the peace, and could serve as magistrates in preliminary hearings. RCW 35.20.250. These statutes intermingled the authority and functions of county justices of the peace and municipal court judges, and limited the cities' power to regulate municipal courts. *Massie v. Brown,* 84 Wn.2d 490, 527 P.2d 476 (1974).

In 1961 the legislature passed the justice court act, RCW 3.30–3.74. The act was mandatory for class AA and class A counties, and optional for any other county by vote of its county commissioners. RCW 3.30.020. The 1961 act was separate and mutually exclusive from the justice of the peace statutes. *Seattle–First Nat'l Bank v. Konz,* 88 Wn.2d 516, 563 P.2d 821 (1977). As stated therein at page 517:

> While RCW 3.20.020 still governs courts not mandatorily or voluntarily under RCW 3.30–3.74, it is not applicable to those courts established under these latter statutes. The acts are separate and mutually exclusive. Therefore the district court did have jurisdiction to enter the judgment in this case.

The 1961 act required a total reorganization of a county's justice and municipal court system. Justice court districting committees were authorized to assist county commissioners in creating justice court districts within each county. RCW 3.38; *LaRose v. King County,* 20 Wn. App. 808, 584 P.2d 393 (1978). The county commissioners were authorized to set district boundaries, enact transitional provisions, and provide for the appointment of justice court commissioners. The terms of the previous justices of the peace ended upon order of the county commissioners, and new judges were to be elected.

Municipal courts in cities and towns subject to the 1961 act could be organized in accordance with the options and alternatives provided in that act. *Long v. Odell,* 60 Wn.2d 151, 372 P.2d 548 (1962). All municipalities in these district

court counties could: (1) establish a "municipal department" of the district court pursuant to RCW 3.46; or (2) file complaints directly in the justice court of the district in which the city is situated. In addition, RCW 3.30.020 permitted cities over 500,000 population to continue under the prior municipal court system provided in RCW 35.20. Cities with a population under 20,000 were allowed to create independent municipal courts apart from the district courts, RCW 3.50, or to continue under the municipal court system existing when the act was passed, RCW 3.50.470.

The legislative history of the 1961 act reveals an intent to create an integrated and consistent court system to replace the maze of lower courts provided in RCW 3.04–3.28 and RCW Title 35. The legislature rejected, for example, proposed amendments which would have permitted any city to retain its existing court system. Senate Journal, 37th Legislature (1961), at 774. Cities situated in counties subject to the justice court act of 1961 were required to select a municipal court system only from the alternatives provided in the act.

In 1967 the legislature passed the optional municipal code, RCW Title 35A. The act was intended to confer greater powers of local self–control than was possible under RCW Title 35. See RCW 35A.01.010. The act provided for municipal courts in code cities, with the following limitation:

> The municipal court or municipal department of code cities governed by the provisions of chapters 3.30 through 3.74 RCW, or chapter 35.20 RCW, shall be organized and conducted in accordance with such statutory provisions as have been elected by the legislative body of such city, and the municipal judge (who may be designated as police judge) of such cities shall be qualified and elected or appointed in accordance with such applicable statutory provisions. RCW 35A.20.020 through 35A.20.110 shall apply to police courts in code cities not covered by the provisions of chapters 3.30 through 3.74 RCW, or chapter 35.20 RCW. Nothing in this chapter shall be

construed to amend or to affect the application of the statutes referred to in this section.

RCW 35A.20.010.

In 1965 the Snohomish County Board of County Commissioners adopted the justice court act. The county's justice court districts were approved in 1966, and the City of Edmonds began filing cases brought for the violation of its ordinances in Edmonds District Court (later to become South District Court). The City of Edmonds reorganized under the optional municipal code in 1971, and thereafter continued filing cases in district court. However, in 1975, ostensibly pursuant to RCW 35A.20, Edmonds created its own police court and stopped municipal ordinance violation case filings in district court. Unlike district court, where jury trials are allowed for certain serious offenses, jury trials are never permitted in police court. *Compare* RCW 3.66.010 *with* RCW 35A.20.040.

The issue presented is whether optional municipal code cities situated in district court counties may forego the provisions of the 1961 justice court act and elect to create a police court pursuant to RCW 35A.20.

██ ██ The legislative history on the optional municipal code does not indicate whether the police court provision was intended to apply to all code cities. Absent a legislative history, traditional rules of statutory construction are employed. *State v. Eilts,* 94 Wn.2d 489, 617 P.2d 993 (1980). The courts must ascertain and give effect to the intent and purpose of the legislature as expressed in the statute. *Strenge v. Clarke,* 89 Wn.2d 23, 569 P.2d 60 (1977). If words of common meaning are used, that meaning must be applied to the statutory language unless the result is absurd or incongruous. *See In re Lehman,* 93 Wn.2d 25, 604 P.2d 948 (1980). In enacting new statutes, the legislature is presumed to be familiar with prior legislation and with the judicial interpretation of its statutes. *State v. Pawling,* 23 Wn. App. 226, 597 P.2d 1367 (1979).

██ Before 1967, the type of municipal court a city could maintain depended upon whether the county in which the

city was located participated in the district court system. Cities in participating counties had to abandon the courts authorized in RCW Title 35 and elect among the alternatives provided in the 1961 act. Cities in counties which retained the older justice of the peace statutes, RCW 3.04–3.28, could establish the applicable municipal court authorized in RCW Title 35. When the optional municipal code was enacted in 1967, the legislature created a court system for code cities which replaced the courts formerly available to those cities under the earlier municipal statutes. We discern no intent, however, to eliminate the exclusive nature of the justice court act of 1961. The police court provisions in RCW 35A.20 for code cities, like the municipal court provisions for noncode cities in RCW Title 35, apply only to cities located in counties not mandatorily or voluntarily subject to the justice court act.

This holding conforms to RCW 35A.20.010, which expressly limits the police court provisions to cities not governed by RCW 3.30–3.74 or RCW 35.20. Since those statutes govern Snohomish County by vote of their county commissioners, the City of Edmonds is precluded from creating a police court pursuant to RCW 35A.20, and instead must select among the alternatives available under RCW 3.30–3.74.

■ Our holding that the present Edmonds Municipal Court lacks jurisdiction over municipal offenses should not be taken to imply that final judgments and sentences previously rendered in that court are now subject to collateral attack. When those judgments were rendered and those sentences imposed, the judge or judges functioned as de facto officers. *Green Mountain School Dist. 103 v. Durkee,* 56 Wn.2d 154, 351 P.2d 525 (1960); *State v. Britton,* 27 Wn.2d 336, 178 P.2d 341 (1947); *State v. London,* 194 Wash. 458, 78 P.2d 548, 115 A.L.R. 1255 (1938). An officer de facto is a person in actual possession of an office, exercising its functions and discharging it duties under color of title. A judge serving under such circumstances has authority until displaced by a direct proceeding for that purpose.

*State v. Franks,* 7 Wn. App. 594, 501 P.2d 622 (1972). Generally, there must be a de jure office before there can be a de facto officer. *Norton v. Shelby County,* 118 U.S. 425, 30 L. Ed. 178, 6 S. Ct. 1121 (1886); Annot., 99 A.L.R. 294 (1935). Where the office is created by legislative act or municipal ordinance, however, the general rule yields and the office is regarded as a de facto office until the act or ordinance is declared invalid. *Marckel Co. v. Zitzow,* 218 Minn. 305, 15 N.W.2d 777 (1944); *State ex rel. McLeod v. Court of Probate,* 266 S.C. 279, 223 S.E.2d 166 (1975); 99 A.L.R., *supra* at 306. The official acts are valid and enforceable against the public and third parties.

In *Landthrip v. Beebe,* ___ Ark. ___, 593 S.W.2d 458 (1980), the court ruled on the validity of cases settled by an unlawfully constituted police court. The court declared:

> When a court is organized under color of law, e. g., when its creation is authorized by law, but the proceedings creating it are irregular or defective, it is a de facto court, and its judgments and proceedings are not open to collateral attack.

*Landthrip v. Beebe, supra* at 461.

The policy underlying the doctrine was expressed in *Marckel v. Zitzow, supra* 218 Minn. at 308, 15 N.W.2d at 779:

> Important official acts were actually performed by the judge of the court created under a statute apparently regularly enacted by the branch of the government to which the power to make laws has been delegated by the constitution. The acts of the incumbent were as potent, as far as the public is concerned, as were the acts of any *de jure* officer performing a duty of a legally existing office. The public, in its organized capacity, as well as private citizens, has acquiesced in and submitted to its authority. Under those circumstances, it appears to us that to suggest that, because there cannot be a *de facto* court without a *de jure* court, all such acts are invalid is too hypercritical a refinement and one which should have no support in law or reason.

These policy concerns are present here. The Edmonds Municipal Court was created with apparent regularity pursuant to established law. Important official duties were discharged by that court, and its final judgments and sentences should not be disturbed. If necessary, its acts may be enforced by the City of Edmonds in the proper forum.

The denial of the writs of review is reversed and the cases are remanded for further action consistent herewith.

RINGOLD and DURHAM, JJ., concur.

Reconsideration denied February 10, 1981.